

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-1-2009

# Kim McMullen v. Franklin Tennis

Precedential or Non-Precedential: Precedential

Docket No. 06-5064

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Kim McMullen v. Franklin Tennis" (2009). *2009 Decisions.* Paper 1451.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1451

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-5064

———————

KIM MCMULLEN,

Appellant

v.

FRANKLIN TENNIS; ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA; ROBERT B. STEWART, III

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 06-cv-00183)
District Judge: Hon. Christopher C. Conner

———————

Argued January 27, 2009

BEFORE: SMITH and  COWEN , Circuit Judges

and THOMPSON*, District Judge

(Filed: April 1, 2009)

Matthew J. Zeigler, Esq. (Argued)
1525 Washington Boulevard
Williamsport, PA 17701

Counsel for Appellant

Gregory A. Jackson, Esq. (Argued)
504 Penn Street
Huntingdon, PA 16652

Robert B. Stewart, III, Esq.
Office of District Attorney
300 Penn Street
Huntingdon, PA 16652

George N. Zanic, Esq.
Huntingdon County Office of District Attorney
207 Washington Street
Huntingdon, PA 16652

Counsel for Appellee Franklin Tennis

---

*Honorable Anne E. Thompson, Senior United States District Judge for the District of New Jersey, sitting by designation

---
OPINION
---

COWEN, <u>Circuit Judge</u>.

Appellant Kim McMullen appeals from the order of the United States District Court for the Middle District of Pennsylvania denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus. We will affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A burglary occurred at a food store in Orbisonia, Pennsylvania in the late evening or early morning hours of February 23-24, 1985. On March 4, 1985, the body of Dominic Barcelona was recovered from a nearby creek. The body was about 300 yards downstream from a railroad bridge and approximately 400 to 500 yards downstream from a highway bridge. Barcelona, a 30-year old man suffering from schizophrenia, was well known throughout the community for his habit of taking extensive walks. At the time, the police made no connection between the burglary and Barcelona's death, and the death was ruled an accidental drowning following an autopsy.

Rumors surfaced in the community that the incidents were in fact related, and the Pennsylvania State Police reopened both investigations in 1989. McMullen, who was then incarcerated on other charges, gave a statement to the police.

3

He admitted that he committed the burglary with another man named Adam Wiser. According to McMullen, the two men fled from the scene and then encountered Barcelona on a nearby bridge. McMullen stated that it was Wiser who actually threw Barcelona into the creek after knocking him to the ground. The investigators ultimately cleared Wiser of any involvement in either the burglary or Barcelona's death, and the Commonwealth of Pennsylvania charged McMullen with burglary and criminal homicide.

Barcelona's mother testified at trial that her son would not have voluntarily walked on either the railroad or highway bridge because he was afraid of both heights and water. On cross-examination, she acknowledged that it was possible that Barcelona might cross a bridge under certain circumstances and that she was uncertain as to what her son actually did during his walks. Barcelona's psychiatrist told the jury that his patient heard voices and suffered from delusions. Refusing both medication and hospitalization, Barcelona occasionally walked into roadways without regard to traffic. He also walked with a limp as a result of being hit by a car during one of his walks in 1983. Witnesses interviewed at the time of his death stated that they saw Barcelona in the vicinity of the town bridge on the night of his disappearance. Finally, a witness testified that she saw an unidentified male carrying a box away from the site of the burglary and toward the railroad bridge at approximately 5 a.m. on February 24.

McMullen objected to the admission of his police statement on corpus delicti grounds. The trial court denied his objections and allowed the statement into evidence. However, the jury also heard testimony from the pathologist who autopsied Barcelona in 1985. The pathologist reiterated his finding of accidental drowning based on the condition of the body and the fact that neither the body nor the location of the drowning showed signs of a struggle. He acknowledged the existence of

4

bruising and lacerations on Barcelona's forehead, adding that such injuries could not have been caused by the impact of falling from the bridge. Nevertheless, he stated that the head injuries could have occurred after the fall and prior to drowning. He finally commented that no additional evidence had come to light since 1985 that would have a bearing on his original autopsy report.

In December 1990, the jury found McMullen guilty of both burglary and second degree murder. The trial court sentenced him to life imprisonment for the murder conviction and eleven months to five years of imprisonment for the burglary conviction. On appeal, the Pennsylvania Superior Court vacated both convictions and remanded for a new trial ("McMullen I"). Commonwealth v. McMullen, 616 A.2d 14, 17 (Pa. Super. Ct. 1992). It specifically held that the Commonwealth failed to establish the requisite corpus delicti for the homicide charge and that the trial court accordingly committed reversible error by admitting McMullen's statement to the police into evidence. Id.

The Commonwealth appealed. According to the Pennsylvania Supreme Court ("McMullen II"), the Pennsylvania Superior Court properly applied the corpus delicti rule with respect to the homicide charge. Commonwealth v. McMullen, 681 A.2d 717, 720-23 (Pa. 1996). On the other hand, the McMullen II court found that "the Superior Court offered no explanation as to why it also vacated Appellee's burglary conviction," even though the Commonwealth clearly established the corpus delicti for this charge. Id. at 723. The Pennsylvania Supreme Court ultimately "affirm[ed] that portion of the Superior Court's Order vacating Appellee's conviction for second degree murder, but reverse[d] that portion of the Superior Court's Order vacating Appellee's conviction for burglary." Id.

The Commonwealth then received permission to exhume

5

Barcelona's body and conduct a second autopsy. Following the second autopsy, the cause of death was ruled to be homicide. McMullen filed a motion to dismiss the homicide charge on double jeopardy grounds. The trial court denied this motion, and the Pennsylvania Superior Court affirmed its ruling on interlocutory appeal ("McMullen III"). Commonwealth v. McMullen, 721 A.2d 370, 372 (Pa. Super. Ct. 1998). The Pennsylvania Superior Court held that a retrial was permissible because the evidence admitted at the first trial, including McMullen's statement to the police, was sufficient to sustain a murder conviction. Id. at 371-72. It further determined that the Commonwealth should be given an opportunity to present its entire case before a ruling on the corpus delicti issue. Id. at 372. Judge Tamilia dissented, concluding that the double jeopardy doctrine barred a retrial. Id. at 372-75 (Tamilia, J., dissenting). McMullen, however, did not seek review of the McMullen III decision in the Pennsylvania Supreme Court.

The Commonwealth then retried McMullen. Over his objections, it used the second autopsy as well as the testimony of the forensic pathologist who conducted this autopsy to demonstrate the requisite corpus delicti for the admission of his statement to the police. In February 1999, a jury again found McMullen guilty of second degree murder, and the trial court sentenced him to life in prison.

On direct appeal, McMullen argued, inter alia, that the admission of the second autopsy evidence violated his double jeopardy rights. The Pennsylvania Superior Court affirmed the second degree murder conviction ("McMullen IV"). Commonwealth v. McMullen, 745 A.2d 683, 685, 689 (Pa. Super. Ct. 2000). It held that this matter did not fall under the Double Jeopardy Clause's "evidentiary insufficiency exception" barring retrial and that the Commonwealth was also allowed to gather and present additional evidence at the second trial to establish the requisite corpus delicti for the admission of

6

McMullen's statement to the police.  Id. at 686-89.  The Pennsylvania Supreme Court denied McMullen's request for allocatur.  He then filed a petition under the Pennsylvania Post Conviction Relief Act, raising, among other things, the double jeopardy issue.  The trial court denied his petition, the Pennsylvania Superior Court affirmed in an unpublished opinion finding that the double jeopardy issue had already been litigated, and the Pennsylvania Supreme Court denied McMullen's application for allowance of appeal.

McMullen filed the current 28 U.S.C. § 2254 petition with the District Court. Acting pro se, he claimed, inter alia, that the Double Jeopardy Clause barred both his retrial as well as the admission of evidence from the second autopsy.  The District Court denied McMullen's double jeopardy claims because he failed to establish that the respective state court rulings were contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  McMullen filed a timely notice of appeal, and this Court granted a certificate of appealability with respect to the claim that his retrial was barred by the Double Jeopardy Clause.

## II.  JURISDICTION AND STANDARDS OF REVIEW

The District Court had jurisdiction over the habeas petition pursuant to 28 U.S.C. §§ 2241 and 2254, and we possess appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.  Because the District Court ruled on the petition without conducting an evidentiary hearing, this Court conducts a plenary review.  See, e.g., Jacobs v. Horn, 395 F.3d 92, 99 (3d Cir. 2005).

In order to obtain habeas relief from his state court conviction and sentence, McMullen must satisfy the standards established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA provides that:

7

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim–

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1).

The "clearly established" language "'refers to the holdings, as opposed to the dicta, of [United States Supreme] Court's decisions as of the time of the relevant state-court decision.'" Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). A state court decision then fails the "contrary to" prong of AEDPA if the state court reaches a conclusion opposite to the Supreme Court's own conclusion on a question of law or decides the case differently where the Supreme Court was confronted by a set of materially indistinguishable facts. See, e.g., Jacobs, 395 F.3d at 100. Similarly, a state court ruling is considered an "unreasonable application" if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply. See, e.g., Jamison v. Klem, 544 F.3d 266, 275 (3d Cir. 2008); Jacobs, 395 F.3d at 100. A state court determination may constitute an unreasonable application even if the Supreme Court has not yet addressed the identical legal issue or fact pattern. Jamison, 544 F.3d at 274. Nevertheless, "[t]he unreasonable application test is an objective one-a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly."

8

Jacobs, 395 F.3d at 100 (citing Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002)).

The District Court denied McMullen's double jeopardy claims based on the AEDPA standards. The Commonwealth likewise argues on appeal that McMullen fails to overcome the statutory presumption of deference. For his part, McMullen claims that the violation of his double jeopardy rights resulted in a grave miscarriage of justice. We acknowledge that this case presents a highly unusual and troubling set of circumstances. Nevertheless, this Court is constrained by the standards established by Congress. As explained below, we ultimately conclude that the District Court was correct to find that the Pennsylvania Superior Court's double jeopardy rulings were neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.[1]

## III. DISCUSSION

### A. Double Jeopardy

The Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The Double Jeopardy Clause is applicable to the states through the Fourteenth Amendment. See, e.g., Benton v. Maryland, 395 U.S. 784, 787 (1969). It is also well established that the Clause's "general

_____

[1] At oral argument, the Commonwealth asserts that McMullen is precluded from raising his double jeopardy claims at this time because he did not seek review from the Pennsylvania Supreme Court after McMullen III and because the Pennsylvania Supreme Court denied his request for allocatur with respect to McMullen IV. We, however, reject the Commonwealth's last-minute and unsupported contention.

9

prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." Lockhart v. Nelson, 488 U.S. 33, 38 (1988) (citing United States v. Ball, 163 U.S. 662 (1896); United States v. Tateo, 377 U.S. 463 (1964)). The prosecution therefore is free to retry a defendant where the conviction is reversed due to "trial error" such as "incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct." Burks v. United States, 437 U.S. 1, 15 (1978).

In Burks v. United States, 437 U.S. 1 (1978), and Greene v. Massey, 437 U.S. 19 (1978), the United States Supreme Court expressly recognized an exception to this "trial error" rule in cases where the reviewing court overturned the conviction because the evidence was insufficient to sustain a guilty verdict. Greene, 437 U.S. at 20, 24; Burks, 437 U.S. at 2, 5-18. This exception rests on two closely related considerations. See, e.g., Tibbs v. Florida, 457 U.S. 31, 40-41 (1982) (discussing Burks and Greene).

First, a reversal for evidentiary insufficiency is considered to be the equivalent of an acquittal. See, e.g., Burks, 437 U.S. at 10-11. Insofar as the Double Jeopardy Clause absolutely bars retrial following an acquittal, the Clause ought to have the same effect where the trial court *should* have entered an acquittal because of insufficient evidence. See, e.g., Tibbs, 457 U.S. at 41; Burks, 437 U.S. at 10-11. In other words, an evidentiary insufficiency determination effectively constitutes a finding that the government failed to prove its case and that the case should never have been submitted to the jury in the first place. See, e.g., Tibbs, 457 U.S. at 41; Burks, 437 U.S. at 15-16.

"Second, Burks and Greene implement the principle that '[t]he Double Jeopardy Clause forbids a second trial for the

10

purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.'" Tibbs, 457 U.S. at 41 (quoting Burks, 457 U.S. at 11). This principle rests at the core of the Double Jeopardy Clause, and it prevents the government from perfecting its strategies and its evidence through repeated prosecutions. See, e.g., id. Successive trials would also unfairly burden the defendant and create the risk of conviction by means of "sheer governmental perseverance." Id. (citations omitted). In addition, "the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." Burks, 437 U.S. at 16. In the end, the Double Jeopardy Clause bars the prosecution from taking "the proverbial 'second bite at the apple.'" Id. at 17.

The Supreme Court in Burks specifically distinguished a reversal on account of evidentiary insufficiency from a "reversal for trial error," explaining that:

> In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e. g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

11

Id. at 15 (citation omitted); see also, e.g., Lockhart, 488 U.S. at 38-39 (noting that rule permitting retrial after reversal for trial error ensures sound administration of justice); Tibbs, 457 U.S. at 40 (stating that trial error rule not only promotes proper administration of justice but that retrial in such circumstances does not implicate type of governmental oppression prohibited by Double Jeopardy Clause).

The Pennsylvania Superior Court expressly recognized these fundamental principles in its two double jeopardy rulings. In both decisions, it acknowledged the fundamental distinction between a reversal for insufficiency of the evidence and reversal on account of trial error. McMullen IV, 745 A.2d at 686-87; McMullen III, 721 A.2d at 371. The McMullen IV court actually considered the Supreme Court precedent interpreting the Double Jeopardy Clause in some detail. Quoting Burks, the Pennsylvania Superior Court stated that "'[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.'" McMullen IV, 745 A.2d at 687 (quoting Burks, 437 U.S. at 11). It noted that the Double Jeopardy Clause clearly prevents a retrial where there is an acquittal or a reversal based on the insufficiency of the evidence, pointing out that the government could not claim prejudice on account of such a prohibition and, on the contrary, should be prevented from taking the proverbial second bite at the apple. Id. (quoting Burks, 437 U.S. at 16-17). It even quoted in full Burks's explanation for the distinction between reversal for evidentiary insufficiency and reversal because of trial error. Id. (quoting Burks, 437 U.S. at 15). Because the Pennsylvania Superior Court properly stated the legal principles established by the United States Supreme Court, the primary question before this Court is whether the rulings nevertheless contradicted or unreasonably applied these governing principles. We conclude that the decisions of the Pennsylvania Superior Court at issue here did not contradict or otherwise apply the

12

governing principles in an unreasonable fashion.

B. The Evidentiary Insufficiency Exception And The Corpus Delicti Rule

McMullen contends that the Pennsylvania Superior and Supreme Courts made an evidentiary insufficiency determination when they vacated his initial conviction for second degree murder. We reject his characterization because the state courts clearly overturned his first conviction based on the evidentiary corpus delicti doctrine.

It is well established that "a conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution, no rational factfinder could have found the defendant guilty beyond a reasonable doubt." Tibbs, 457 U.S. at 37; see also, e.g., Commonwealth v. Reyes, 681 A.2d 724, 725-27 (Pa. 1996). In contrast, the corpus delicti rule generally "governs the admissibility" of a defendant's inculpatory out-of-court statements and "not the sufficiency of evidence to convict." Gov't of V.I. v. Harris, 938 F.2d 401, 409 n.6 (3d Cir. 1991) (citations omitted) (discussing Virgin Islands corpus delicti rule). The purpose of such a rule is "to guard against 'the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed.'" McMullen II, 681 A.2d at 721 (quoting Commonwealth v. Turza, 16 A.2d 401, 404 (Pa. 1940)); see also, e.g., Reyes, 681 A.2d at 727 (same). The rule is "'rooted in our hesitancy to convict one of [a] crime on the basis of his own statements only.'" McMullen IV, 745 A.2d at 687 (quoting Commonwealth v. Ware, 329 A.2d 258, 274 (Pa. 1974)).

Pennsylvania's corpus delicti rule implicates a "'two-tiered approach'" with a "'dual level of proof.'" Jacobs, 395 F.3d at 109 (quoting Reyes, 681 A.2d at 728); see also Harris, 938 F.2d at 409 n.6 ("Therefore, if we determine that the

13

admission is not clearly erroneous, we next decide whether a rational trier of fact could have found the defendant guilty based on the confession and the corroborating evidence." (citation omitted)); Commonwealth v. Persichini, 737 A.2d 1208, 1210-12 (Pa. 1999) (Castille, J., opinion in support of affirmance) (criticizing Pennsylvania's two-tiered rule). "The first tier pertains solely to the admissibility of the defendant's [inculpatory] out-of-court [statement]." Jacobs, 395 F.3d at 109 (citing Reyes, 681 A.2d at 727). In a homicide prosecution, this "admissibility tier" requires the Commonwealth to show by a preponderance of other evidence that an individual was dead and that the death resulted from criminal means. See, e.g., id. at 109-10. The second tier then provides that "the jury may not consider the [statement] unless the Commonwealth proves the corpus delicti beyond a reasonable doubt." Id. at 110 (emphasis omitted) (citing Reyes, 681 A.2d at 728; Commonwealth v. Tallon, 387 A.2d 77, 81 (Pa. 1978)).

In McMullen I and McMullen II, the Pennsylvania Superior and Supreme Courts applied the "admissibility tier" of the state corpus delicti rule to vacate the second degree murder conviction. Neither court addressed the issue of whether the evidence, viewed in the light most favorable to the Commonwealth, was insufficient to support the jury's initial guilty verdict. On the contrary, they consistently and correctly characterized the corpus delicti issue before them as one that concerned the *admissibility* of evidence. For instance, the Pennsylvania Supreme Court stated that "the Superior Court properly found that the trial court erred in *admitting* Appellee's statement regarding the homicide into evidence."[2] McMullen II,

_____

[2] See also, e.g., McMullen II, 681 A.2d at 720 (noting that McMullen "objected to the *admission* of the statement" and that "[u]nder the corpus delicti rule, extrajudicial inculpatory statements of the accused may not be *admitted into evidence*

14

681 A.2d at 722 (emphasis added). The Pennsylvania Superior Court also expressly remanded the matter for a new trial after making its corpus delicti ruling. McMullen I, 616 A.2d at 17. It presumably would not have ordered a retrial if it had rejected the guilty verdict pursuant to the well-established evidentiary insufficiency rule.

According to McMullen, the Pennsylvania Supreme Court barred a retrial. But the Pennsylvania Supreme Court never expressed any disagreement with the remand order. It instead referred to the remand order in its summary of the case's factual and procedural history. McMullen II, 681 A.2d at 720. Accordingly, the Pennsylvania Superior Court reasonably determined in McMullen IV that "the Supreme Court affirmed that portion of the Superior Court Order vacating Appellant's murder conviction, and, by implication, affirmed the grant of a new trial." See McMullen IV, 745 A.2d at 689 (citing McMullen II, 681 A.2d at 723).

In the end, it is clear that neither the Pennsylvania Superior Court nor the Pennsylvania Supreme Court made an evidentiary insufficiency ruling in overturning the first conviction on corpus delicti grounds. But this conclusion does not end our double jeopardy inquiry.

C. Corpus Delicti As Functional Equivalent Of Evidentiary Insufficiency Ruling

---

unless it is corroborated by independent evidence that a crime actually occurred" (emphasis added)); McMullen I, 616 A.2d at 16-17 (framing McMullen's argument as claim that "the court erred by *admitting* [his] inculpatory statements into *evidence*" and subsequently holding that "the court erred by *admitting* [McMullen's] statement into *evidence*" (emphasis added)).

15

Alternatively, a corpus delicti determination could be considered as the "functional equivalent" of a reversal of a conviction for insufficiency of the evidence. We acknowledge that such a characterization is not without some merit. The McMullen IV court acknowledged that a corpus delicti determination "does not fall squarely into either [the evidentiary insufficiency or the trial error] category." McMullen IV, 745 A.2d at 687. McMullen also emphasizes the strong language used by the Pennsylvania Supreme Court in its corpus delicti ruling:

> In the present matter, we have no difficulty concluding that the evidence independent of Appellee's statement was insufficient to establish the corpus delicti for the homicide charge. The only evidence pointing to foul play were the bruises and lacerations on the decedent's face, and the pathologist could not conclude that these blows were more likely caused by an assailant than they were by decedent's striking objects after falling into the water. On the other hand, much evidence pointed to the decedent's death being an accident, including the lack of signs of a struggle and decedent's own behavior. Most notably, no new evidence other than Appellee's statement surfaced between the time of the original findings of accidental death and the reopening of the burglary and death investigations.

McMullen II, 681 A.2d at 722 (footnote omitted). In addition, the Commonwealth's conduct here following the reversal of the initial conviction on appeal was arguably inconsistent with the underlying purposes of the double jeopardy doctrine. It exhumed Barcelona's body, conducted a second autopsy, and then retried and convicted McMullen based on its new evidence. As McMullen points out, the Commonwealth evidently could

16

have obtained the second autopsy to use in the first trial, but it chose not to do so. The Commonwealth instead waited and arguably received what the Double Jeopardy Clause was meant to prohibit, namely "another opportunity to supply evidence which [it] failed to muster in the first proceedings." Tibbs, 457 U.S. at 41 (quoting Burks, 437 U.S. at 11). In other words, the Commonwealth apparently got a second bite of the apple.

If this Court were considering a challenge to a federal conviction, we may be inclined to find a violation of the Double Jeopardy Clause. However, we are currently confronted with a habeas challenge to a *state court* conviction and therefore bound by the deferential standards established by Congress. Based on these standards, we have no choice but to reject the double jeopardy claims.

McMullen has failed to cite any United States Supreme Court case addressing the specific question of how a previous corpus delicti determination should be treated for purposes of the Double Jeopardy Clause. It appears that no such ruling exists. McMullen turns to the United States Supreme Court's decision in Tibbs v. Florida, 457 U.S. 31 (1982). But the Supreme Court in Tibbs actually held that a reversal based on the weight of the evidence falls under the general trial error rule and therefore does not preclude a retrial. Id. at 32, 39-47.

The Supreme Court's Tibbs ruling further highlights the narrow scope of the evidentiary insufficiency exception. Like a reversal based on the weight of the evidence, a determination concerning the erroneous admission of an inculpatory statement appears to be nothing more than a "trial error" for purposes of the Double Jeopardy Clause. See, e.g., Burks, 437 U.S. at 15 (distinguishing between evidentiary insufficiency determination and trial errors such as "incorrect receipt or rejection of evidence"); Evans v. Ct. of Comm. Pl., 959 F.2d 1227, 1235 (3d Cir. 1992) ("The Supreme Court has declined to apply Burks in the absence of an appellate finding of insufficiency of the

17

evidence."). The Tibbs decision also indicates that the Pennsylvania Superior Court's decision to allow the Commonwealth to obtain and then use a second autopsy at the retrial was neither contrary to, nor an unreasonable application of, United States Supreme Court precedent. In fact, the Pennsylvania Superior Court expressly quoted Tibbs itself, noting that "'[a] second chance for the defendant, of course, inevitably affords the prosecutor a second try as well.'" McMullen IV, 745 A.2d at 688 (quoting Tibbs, 457 U.S. at 43 n.19).

We recognize that a state court's decision may constitute an "unreasonable application" under AEDPA even if the United States Supreme Court has never addressed the identical legal issue or fact pattern. See, e.g., Jamison, 544 F.3d at 274. But there is more here than either the absence of Supreme Court precedent addressing the corpus delicti rule in the double jeopardy context or the Supreme Court's own decision in Tibbs. On the contrary, the Supreme Court's ruling in Lockhart v. Nelson, 488 U.S. 33 (1988), represents an insurmountable obstacle for McMullen's claims.

In Lockhart, a sentencing hearing was conducted before a jury to determine whether the defendant had the requisite four prior felony convictions for an enhanced sentence under Arkansas's habitual offender statute. Id. at 35-36. The prosecution presented, without objection from defense counsel, certified copies of four prior felony convictions. Id. at 36. Unbeknownst to the prosecutor, the defense attorney, and the sentencing judge, one of the convictions had been pardoned by the governor. Id. The defendant himself tried to raise the pardon issue on cross-examination, but he eventually agreed that his conviction had been commuted after further questioning by the judge. Id. The jury eventually found that the prosecution established the requisite number of convictions and imposed an enhanced sentence. Id. The state courts repeatedly upheld the

18

sentence despite the defendants's protestations of a pardon. Id. In a subsequent habeas proceeding, the federal circuit court set aside the defendant's enhanced sentence as a habitual offender because of the erroneous admission of evidence in the form of the pardoned conviction. Id. at 37. Most importantly, the federal court barred any retrial on the ground that the remaining admissible evidence adduced at the first trial was legally insufficient to support a habitual offender sentence. Id. at 34, 37.

The Supreme Court in Greene previously reserved the question of "whether the Double Jeopardy Clause allows retrial when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction." Id. at 40 (citing Greene, 437 U.S. at 26 & n.9). In Lockhart, the Supreme Court clearly answered this question in the affirmative. It observed that the enhanced sentence conviction had been overturned on account of a trial error regarding the admission of evidence of a pardoned conviction and pointed out the lack of prosecutorial misconduct with respect to this evidentiary error. Id. at 34, 38-42. The Supreme Court held that "in cases such as this, where the evidence offered by the State and admitted by the trial court-whether erroneously or not-would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial." Id. at 34. Just like a trial court ascertaining whether to grant a judgment of acquittal, "a reviewing court must consider all the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause." Id. at 41-42. Returning to the specific circumstances presented by the sentencing hearing, the Supreme Court observed that the sentencing judge presumably would have allowed the prosecution the opportunity to present evidence of another prior conviction if the defendant had offered evidence at the

19

sentencing hearing proving the existence of a pardon. Id. at 42. The Supreme Court's "holding today thus merely recreates the situation that would have been obtained if the trial court had excluded the evidence of the conviction because of the showing of the pardon." Id.

The current case implicates the same kind of situation addressed in Lockhart. Specifically, the trial court erroneously allowed McMullen's statement to the police into evidence, and, without this statement, there would have been insufficient evidence to support the guilty verdict for second degree murder. As in Lockhart, there does not appear to be any allegation of misconduct on the part of the Commonwealth with respect to the admission of the police statement. The Pennsylvania Superior Court then reasonably concluded that the Double Jeopardy Clause did not bar a retrial and the introduction of additional evidence because "the evidence presented during the first trial was legally sufficient to sustain the verdict, *albeit strengthened by Appellant's inadmissible statement.*" McMullen IV, 745 A.2d at 688 (emphasis added); see also McMullen III, 721 A.2d at 371-72 ("Since the record from the first trial contained sufficient evidence to support the conviction, we are only able to find the evidence is insufficient if we ignore the improperly admitted inculpatory statement of appellant, an action which we are not permitted to undertake at this point in the proceedings.").

In her dissenting opinion, Judge Thompson questions the value of McMullen's statement, concluding that the Pennsylvania Supreme Court necessarily implied that there was insufficient evidence to support the conviction *even* including the statement itself. Nevertheless, the statement still constituted powerful evidence of McMullen's guilt. In McMullen II, the Pennsylvania Supreme Court expressly characterized McMullen's statement as inculpatory because "it places him at the scene of the alleged murder and reveals a motive for the alleged murder, namely, to kill the witness to [the burglary]."

20

McMullen II, 681 A.2d at 721. In fact, it otherwise would have been unnecessary for the Pennsylvania Supreme Court to conduct a corpus delicti analysis in the absence of an inculpatory statement because "the corpus delicti rule attaches to inculpatory statements only." Id.

Lockhart admittedly concerned a sentencing hearing and not a trial determining a person's guilt. Lockhart, 488 U.S. at 35-37. But the Supreme Court's own language indicates that its holding and reasoning applies to trials as well. See, e.g., id. at 40 (framing issue on appeal as whether Double Jeopardy Clause allows "retrial" and referring to reversal for "trial error" and insufficient evidence to support "judgment of conviction"), 41 (stating that reviewing court must consider all evidence admitted by trial court in deciding whether retrial is permissible). The sentencing hearing at issue in Lockhart, at which the prosecution had to prove to a jury beyond a reasonable doubt that the defendant had four prior felony convictions, also closely resembled a trial. Id. at 35-36.

Likewise, McMullen's suggestion that his inculpatory police statement constituted the *only* evidence of homicide presented at his first trial must be rejected as inconsistent with the record. While the other evidence may have been insufficient to satisfy the corpus delicti rule or to prove the elements of second degree murder beyond a reasonable doubt, it remains clear that *other evidence* in addition to the police statement was still introduced in the first trial. Initially, there was no dispute that a person had died. The Commonwealth thereby clearly established that an individual was dead, satisfying one vital (and often contested) component of the corpus delicti rule. See, e.g., Jacobs, 395 F.3d at 109-10. The Pennsylvania Supreme Court further acknowledged that "the bruises and lacerations on the decedent's face" constituted "evidence pointing to foul play." McMullen II, 681 A.2d at 722. In addition to other pieces of evidence, the Commonwealth presented the testimony of a

21

woman who saw a male carrying a box away from the nearby burglary site and toward the railroad bridge. Id. at 722 n.5. While the Pennsylvania Supreme Court considered such evidence irrelevant to the corpus delicti inquiry, see id. at 722 & n.5, the woman's testimony apparently was relevant to establishing the overall elements of second degree murder (as well as a motive for the crime itself).

Finally, Judge Tamilia addressed Lockhart in some detail in his opinion dissenting from the Pennsylvania Superior Court's corpus delicti ruling in McMullen III. The dissenting Judge attempted to distinguish Lockhart based on an apparent theory of "substitution."[3] McMullen III, 721 A.2d at 374-75 (Tamilia, J., dissenting) (citing Hull v. State, 607 So.2d 369, 378-79 (Ala. Crim. App. 1992)). According to Judge Tamilia, the prosecution in Lockhart merely substituted an already available prior conviction for the conviction that had been pardoned. Id. at 374 (Tamilia, J., dissenting). On the other hand, the Commonwealth here attempted "to circumvent the corpus delicti rule by reviving the appellant's inculpatory statement found to be inadmissible by offering proof of the corpus delicti not available at the time of the first trial." Id. (Tamilia, J., dissenting).

Like Judge Tamilia, we are troubled by the highly unusual manner in which the Commonwealth and its courts handled McMullen's prosecution. Nevertheless, the Court need not reject (or accept) his "substitution" theory at this time.[4] We

_____

[3] McMullen likewise raised this theory of substitution at oral argument.

[4] At the same time, we must point out that this whole theory of substitution appears to have its own deficiencies. As explained by McMullen's counsel at oral argument, the entire notion appears based on a distinction between cases, such as in

22

reiterate that our current role is limited to deciding whether the double jeopardy rulings by the Pennsylvania Superior Court violated AEDPA. The fact that Judge Tamilia, in dissent, believed it was necessary to distinguish a prior Supreme Court decision further shows that the rulings in question here were neither contrary to, nor an unreasonable application of, Supreme Court precedent. In fact, Judge Tamilia recognized that the interpretation of Lockhart as requiring a court to "consider both admissible and inadmissible evidence in determining whether the prosecution presented sufficient evidence to sustain a guilty verdict" was "*not necessarily incorrect.*" Id. at 374 (Tamilia,

---

Lockhart, where the prosecution had evidence in its file at the time of the first trial but chose not to present it, and proceedings, like the current matter, where the prosecution evidently chose not to obtain the evidence until after the first conviction was overturned. But the fact remains that the prosecution in Lockhart never introduced the available evidence into the record when it had the *opportunity* to do so at the first sentencing hearing. See, e.g., Tibbs, 457 U.S. at 41 (stating that Double Jeopardy Clause precludes prosecution from receiving "'another opportunity to supply evidence which it failed to muster in the first proceeding'" (quoting Burks, 457 U.S. at 11)). At the very least, it would have been reasonable to expect the prosecution in Lockhart to present all of the habitual offender evidence in its file at the initial hearing, especially after the defendant himself attempted to raise the issue of a pardon on cross-examination. Lockhart, 488 U.S. at 36. As Justice Marshall noted in his Lockhart dissent, "one might inquire into whether prosecutors tend in close cases to hold back probative evidence of a defendant's guilt; if they do not, there would be scant societal interest in permitting retrial given that the State's remaining evidence is, by definition, insufficient." Lockhart, 488 U.S. at 295 (Marshall, J., dissenting).

23

J., dissenting) (emphasis added).

Lockhart accordingly demonstrates that the Pennsylvania Superior Court's double jeopardy rulings did not infringe the deferential standards governing this habeas matter. In other words, the Pennsylvania Superior Court did not reach a legal conclusion contrary to the United States Supreme Court's own conclusion on a question of law, did not reach a different result where the Supreme Court was confronted by a set of materially indistinguishable facts, and did not unreasonably extend or refuse to extend a legal principle identified by the Supreme Court. Like the District Court, we therefore must reject McMullen's double jeopardy claims.

IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's order denying the petition for a writ of habeas corpus.

Thompson, District Judge

While I respect the thoughtful, careful majority opinion, I respectfully dissent and would reverse the District Court's denial of Appellant's petition for habeas corpus because the Pennsylvania Superior Court, in McMullen III and IV, unreasonably applied the rule in Burks v. U.S., 437 U.S. 1 (1978). The Double Jeopardy Clause forbids a retrial for the purpose of affording the prosecution a second opportunity to provide evidence it failed to muster in the first trial, including where the first conviction was reversed for insufficiency of the evidence. Id. at 11. The second McMullen trial is a classic example of such a prohibited proceeding: the Pennsylvania Supreme Court's reversal of Petitioner's first conviction for

24

violation of the corpus delicti rule was the functional equivalent of a reversal for insufficiency of the evidence. Therefore, by affording the prosecution the opportunity to collect and then present further evidence at the second trial, the Pennsylvania courts failed to reasonably apply clearly established federal law as determined by the <u>Burks</u> Court.

At McMullen's first trial, aside from McMullen's statement to the police, the prosecution presented only the following evidence purporting to establish McMullen's guilt: (1) an autopsy report, noting bruises and lacerations on the victim's face, (2) the victim's mother's testimony that her son would not have voluntarily walked onto the bridge, given his psychological state, and (3) the testimony of a witness who saw an unidentified male carrying a box away from the site of the burglary and toward the bridge. The pathologist who performed the autopsy, however, testified at trial that he had concluded that the victim had accidentally drowned, based on the condition of the body and the lack of signs of a struggle. The county coroner concurred in this conclusion. Considering this paucity of evidence of McMullen's guilt, independent of McMullen's statement, the Pennsylvania Superior Court, and then the Pennsylvania Supreme Court, reversed the murder conviction, finding that the prosecution had even failed to show that the victim's death was more likely caused by criminal means than it was by an accident.

This reversal was undoubtedly the equivalent of one for insufficient evidence, even though cast as one for erroneously admitted evidence. Given that the Pennsylvania Supreme Court found that the evidence presented independent of McMullen's statement did not even suffice to show that the victim was killed by another person, let alone by McMullen, the prosecution's *only* evidence of McMullen's guilt was his statement. But, as the

25

Court in <u>McMullen II</u> recognized, McMullen's statement was only inculpatory in part. <u>McMullen II</u>, 681 A.2d at 721. McMullen told police that he witnessed Wiser, McMullen's alleged accomplice in the burglary, throw the victim into the water – a statement that only placed McMullen at the scene but admitted no liability. Therefore, in reversing the conviction for lack of any evidence of a crime independent of the statement, the Supreme Court necessarily implied, if not directly found, that there was insufficient evidence to support the conviction even including the statement.[5]

Once the Pennsylvania court in <u>McMullen II</u> determined that there was insufficient evidence to support the initial conviction and reversed that conviction, the court violated the Double Jeopardy clause by allowing the prosecution another opportunity to collect and present additional evidence at a second trial. Thus, by failing to recognize this most apparent reversal for insufficiency of the evidence and to forbid the prosecution to proceed with the second trial, the court in <u>McMullen III</u> and <u>McMullen IV</u> failed to reasonably apply the clearly established rule under <u>Burks</u>.

The <u>Lockhart</u> opinion relied upon by the majority is inapposite. <u>Lockhart</u> dictates that the Double Jeopardy Clause does not bar re-trial "where the evidence offered by the State and admitted by the trial court-whether erroneously or not-would have been sufficient to sustain a guilty verdict." <u>Lockhart</u>, 488 U.S. at 34. Here, the sum of the evidence admitted at the first

_____

[5] Of note, the court in <u>McMullen II</u> did not explicitly discuss whether, including the statement, there was sufficient evidence to support the conviction and only reached that question when faced with the Double Jeopardy issue in <u>McMullen III</u>.

26

trial was not sufficient to sustain a guilty verdict, and, as discussed above, the McMullen II court found as much in reversing the conviction. As the Lockhart Court noted in summarizing its conclusion: "Had the defendant offered evidence at the sentencing hearing to prove that the conviction had become a nullity by reason of the pardon, the trial judge would presumably have allowed the prosecutor an opportunity to offer evidence of another prior conviction to support the habitual offender charge. Our holding today thus merely recreates the situation that would have been obtained if the trial court had [properly] excluded the evidence of the conviction because of the showing of a pardon." Id. at 42. In contrast, the prosecution here did not have sufficient evidence to convict at the time of the first trial and was reversed for that reason. Had the trial court properly excluded McMullen's statement, the prosecution would not have been able to present any additional evidence in order to carry its burden and the court would have had no choice but to direct a verdict of not guilty.

In sum, by focusing on what the Pennsylvania courts *call* a rule of admissibility instead of on the prosecution's initial failure to present sufficient evidence to support a conviction and subsequent second bite at the apple in this present case, the Pennsylvania courts have allowed a classic double jeopardy prosecution to occur.

27