**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3365
_____

MARK WHITAKER,
Appellant

v.

SUPERINTENDENT COAL TOWNSHIP SCI;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. Action No. 2-14-cv-2321)
District Judge: Honorable Edward G. Smith

_____

Argued: October 3, 2017

Before: SHWARTZ and ROTH, <u>Circuit Judges</u>, and PAPPERT, <u>District Judge</u> [*]

(Opinion filed: January 24, 2018)

Will W. Sachse, Esquire (Argued)[1]
Katherine U. Davis, Esquire
Dechert LLP
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104

_____

[*] The Honorable Gerald J. Pappert, District Judge of the Eastern District of Pennsylvania, sitting by designation.

[1] We thank Appellant's counsel and his firm for accepting the *pro bono* appointment and for their very able representation. Lawyers who act *pro bono* provide the highest service that the bar can offer.

Jacob Boyer
University of Pennsylvania School of Law
3400 Chestnut Street
Philadelphia, PA 19104

Counsel for Appellant

John W. Goldsborough, Esquire (Argued)
Max C. Kaufman, Esquire
Susan E. Affronti, Esquire
Ronald Eisenberg, Esquire
Kathleen E. Martin, Esquire
R. Seth Williams, Esquire
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107

Counsel for Appellees

_____

OPINION**
_____

PAPPERT, District Judge.

Appellant Mark Whitaker was convicted and sentenced to life in prison for his role in the robbery of a bar in Philadelphia and the murder of one of its bartenders. His direct appeals were unsuccessful as were his efforts under Pennsylvania's Post-Conviction Relief Act. He filed a *pro se* habeas petition raising several claims, including that his rights under the Sixth Amendment's Confrontation Clause were violated and that he was denied effective assistance of counsel at his trial. The Magistrate Judge recommended the denial of Whitaker's petition in its entirety and the District Court adopted that recommendation. While we conclude that the Confrontation Clause claim was untimely

---

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

and will affirm its denial, we will vacate the part of the District Court's Order denying the ineffective assistance claim and remand that claim so that the District Court can conduct an evidentiary hearing consistent with this Opinion.

## I

Shortly after 7 p.m. on January 26, 1999, Donna Mestichelli, the daytime bartender at Happy Days Bar in Philadelphia, was completing her shift. (J.A. 86, 411.) Mestichelli and the bartender relieving her, Mario Lim, were totaling the day's cash receipts, which they then placed into a bag under the bar. (J.A. 86.) Mestichelli then remained in the bar with her boyfriend Thomas Ceneviva and her brother Thomas Zingani. (*Id.*)

Just before Mestichelli finished work for the day, Whitaker, Abdul Lee Stewart and Saleem Shakuur entered the bar. (*Id.*) Whitaker subsequently left the bar through a side door, only to reenter through the front door and hold two customers at gunpoint. (*Id.*) Stewart, who also had a gun, went behind the bar to collect the cash and in doing so, shot and killed Lim. Shakuur, who was holding Mestichelli, Zingani and Ceneviva at gunpoint, shot Zingani, paralyzing him. (*Id.*) After taking the money, the three robbers fled. (*Id.*)

Philadelphia police interviewed Ceneviva and Mestichelli shortly after the robbery. Ceneviva gave two statements, saying in both that there were two robbers, neither of whom he could identify. (J.A. 487.) Mestichelli said that there were three robbers, none of whom she could identify. (J.A. 416, 423–26.) Ceneviva was interviewed two more times in the year following the robbery, and at some point

identified Stewart and Shakuur, who were subsequently arrested, as the two robbers. (J.A. 124, 502, 505–06.) While in custody, Stewart wrote and videotaped a confession describing his involvement in the robbery along with Shakuur and Whitaker's participation. (J.A. 129–131.) Whitaker was eventually arrested and charged with second-degree murder, robbery, criminal conspiracy and related offenses. (J.A. 126, 87, 598–99.)

Shakuur was tried first. Ceneviva, at that point in jail in Florida for attempted armed robbery, was brought to Pennsylvania to testify against Shakuur. Before testifying, he gave a fifth statement to the police that differed from those he gave immediately after the robbery and the subsequent year. For the first time, he said there was a third robber, and that Whitaker was that person. (J.A. 492–96.)

After testifying against Shakuur but before being returned to Florida, Ceneviva was placed in a holding cell at Curran-Fromhold Correctional Facility. (J.A. 491–92.) While in the cell, Ceneviva saw Shakuur being escorted into the holding area and placed in a nearby cell. (J.A. 492.) A conversation began between Shakuur and another man in a different cell, whom Ceneviva identified as Whitaker through a reflection in the glass and after walking past his cell to get a drink of water. (J.A. 491.) Ceneviva overheard and recorded details from the conversation, including Whitaker's name, a phone number, and Whitaker's instruction to Shakuur to "tell them I didn't know anything about this." (J.A. 491–95.)

Whitaker and Stewart were tried together. (J.A. 87–88.) Before trial, Whitaker's counsel filed motions to prohibit the Commonwealth from introducing Stewart's

confession against Whitaker and to preclude Ceneviva from testifying about the conversation he overheard between Whitaker and Shakuur. (J.A. 87.) The trial court denied the motions, but ordered Stewart's confession redacted in an effort to comply with *Bruton v. United States*, 391 U.S. 123 (1968), replacing Whitaker's name in the confession with "the other guy." (*Id.*)

At trial, neither Whitaker nor Stewart testified but the prosecution introduced portions of Stewart's redacted confession. Over counsel's objection, Mestichelli identified Whitaker for the first time in court, though nearly five years had passed since the robbery.[2] (J.A. 421, 426–30.) Counsel cross-examined Mestichelli, highlighting failings in her memory and her prior inability to identify Whitaker, including in a photograph. (J.A. 426.) Ceneviva testified that Whitaker was the third robber and also described the conversation he overheard between Whitaker and Shakuur in jail. (J.A. 490–96.) Counsel cross-examined Ceneviva, pointing out inconsistencies between his trial testimony and prior statements to police. (J.A. 502–512.) Philadelphia Police Detective Stephen Vivarina also testified and confirmed that the phone number Ceneviva wrote down while listening to the conversation between Whitaker and Shakuur was registered to Whitaker's brother and sister, Paul and Karen Whitaker; Whitaker had listed Paul and Karen as his siblings when filling out paperwork following his arrest. (J.A. 576–77.)

---

[2] At sidebar, Whitaker's lawyer objected and moved for a mistrial because Mestichelli had not been previously named by the prosecution as someone who could identify Whitaker. (J.A. 418.)

The prosecutor referred to Stewart's confession a number of times in his closing argument. He noted that Stewart's confession corroborated Ceneviva's testimony because both identified a third robber who had a gun. (J.A. 749–50.) The prosecutor also stated that "Mark Whitaker participated in this and stayed from beginning to end and left with these men and shared in the proceeds…." (J.A. 765.) Whitaker's attorney objected to the closing argument on seven separate occasions, but did not object to the mention of Whitaker's participation, which effectively identified Whitaker as "the other guy."[3] During his closing argument, Whitaker's attorney argued that there was no evidence of Whitaker's guilt other than the testimony of Mestichelli and Ceneviva, highlighted inconsistencies in their testimony, Mestichelli's prior inability to identify Whitaker, and pointed out Ceneviva's failure to mention or identify a third robber until Shakuur's trial. (J.A. 632–43.)

The court instructed the jury, *inter alia*, that the Commonwealth had the burden to prove each defendant guilty of every element of the crimes charged, that each defendant's guilt should be considered separately, that the jurors should consider Stewart's confession only against him and not Whitaker, and that they should assess the truthfulness and

---

[3]     Counsel objected to: (1) a statement that Whitaker and Stewart were neighbors, (J.A. 702); (2) the comment that Mestichelli was previously unable to identify Whitaker in a photo line-up because the people in the photos all look the same, (J.A. 720); (3) a comment about a hearing challenging Ceneviva's identification of Whitaker, (J.A. 732); (4) a second statement that Whitaker and Stewart were neighbors, (J.A. 737); (5) a comment about Ceneviva's testimony recounting the size of the bar, (J.A. 743); (6) the reading to the jury of Corrections Officer Nolan's statement that Ceneviva identified Whitaker after walking past his cell, (J.A. 747); and (7) the statement that the jury was to infer Shakuur did not want Whitaker implicated in the crime after Shakuur was arrested and being tried, (J.A. 757).

accuracy of each witness's testimony and decide whether to believe all, part or none of that testimony. (J.A. 774–80.) The court also specifically instructed the jury to consider Mestichelli's testimony with caution based on her prior failure to identify Whitaker. (J.A. 795.) The jury found Whitaker guilty of second-degree murder, robbery, criminal conspiracy, possessing instruments of a crime, and aggravated assault, and he was sentenced to life imprisonment. (J.A. 85, 88.)

## II

Whitaker appealed the verdict to the Superior Court of Pennsylvania, arguing that the introduction of Stewart's redacted statement violated his Confrontation Clause rights under *Bruton*, and that his lawyer provided ineffective assistance when he failed to object to the prosecutor's "unmasking" of Whitaker as "the other guy." The Superior Court denied Whitaker's *Bruton* claim and dismissed his ineffective assistance claim without prejudice so that the claim could be presented on collateral review. (J.A. 85–103.)

The following year, Whitaker filed for collateral review under Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541–46, asserting ineffective assistance of counsel, again based on his lawyer's failure to object to the prosecutor's identification of Whitaker as "the other guy" in Stewart's confession. (J.A. 104.) The PCRA court dismissed the claim without a hearing. (J.A. 107–08.) On appeal, the Superior Court dismissed the ineffectiveness claim as meritless, relying on the Pennsylvania Supreme Court's decision in *Commonwealth v. Brown*, 592 Pa. 376 (2007) (*Brown I*), which held that the United States Supreme Court had not extended the reach of the Confrontation Clause to non-evidentiary commentary by counsel. (J.A. 114–15.)

On April 16, 2014, Whitaker filed in the District Court a timely *pro se* habeas petition.  (ECF No. 1.)  He raised seven claims, including ineffective assistance of counsel for failing to object or seek a mistrial based on the prosecution's identification of him as "the other guy."  (ECF No. 1 at 13–14.)  The Commonwealth responded to the petition on November 19, 2014.  (ECF No. 18.)  Whitaker replied on December 29, 2014, and included for the first time an eighth claim: that admitting Stewart's confession at trial violated Whitaker's Confrontation Clause rights under *Bruton*.  (ECF No. 22 at 17–20.)

The Magistrate Judge recommended the denial of Whitaker's petition in its entirety.  (J.A. 39–45, 69–72.)  The Report and Recommendation did not reach the merits of Whitaker's *Bruton* claim, concluding that the claim was time-barred by the one-year statute of limitations imposed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  (J.A. 41–42.)  The Report also stated that Whitaker's *Bruton* claim did not relate back to his timely ineffective assistance claim.  (J.A. 43.)

As to the ineffective assistance claim, the Magistrate Judge concluded that the Superior Court's reliance on *Brown I* was not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984) because there had been no underlying *Bruton* violation by the prosecutor's comments, and thus "any attempt to move for a mistrial would have been unsuccessful."  (J.A. 71.)  The District Court adopted the Report and Recommendation in its entirety and denied Whitaker's petition.  (J.A. 17–18.)  Whitaker filed a timely notice of appeal. (J.A. 1).

## III

The District Court had subject matter jurisdiction over Whitaker's habeas petition under 28 U.S.C. §§ 2241 and 2254.  We have jurisdiction over this appeal from the District Court's order denying the petition pursuant to 28 U.S.C. §§ 1291 and 2253.  We granted a certificate of appealability on two claims: (1) that the admission of Stewart's redacted confession violated Whitaker's rights under the Confrontation Clause of the Sixth Amendment and *Bruton*; and (2) that Whitaker's trial counsel rendered ineffective assistance by failing to object or seek a mistrial when the prosecutor, in his closing argument, identified Whitaker as "the other guy" in Stewart's confession.  "Our review of the District Court's legal conclusions is…plenary, and we evaluate 'the state courts' determinations under the same standard that the District Court was required to apply.'" *Williams v. Beard*, 637 F.3d 195, 204 (3d Cir. 2011) (quoting *Lewis v. Horn*,581 F.3d 92, 100 (3d Cir. 2009)).

## A

We first address Whitaker's *Bruton* claim, which he did not assert until he filed his Reply on December 23, 2014.  (J.A. 39–45.)  AEDPA imposes a strict one-year time limitation on the filing of a habeas petition.  Federal Rule of Civil Procedure 15(c)(1)(B), however, states that an amendment of a pleading relates back to the date of the original pleading when it "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  "So long as the original and amended petitions state claims that are tied to a common core of

9

operative facts, relation back will be in order." *Mayle v. Felix,* 545 U.S. 644, 664

(2005); *see also Hodge v. United States*, 554 F.3d 372, 378 (3d Cir. 2009). An untimely

claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it

asserts a new ground for relief supported by facts that differ in both time and type from

those the original pleading set forth." *Mayle,* 545 U.S. at 650 (parenthetical in original).

We review "the District Court's interpretation of the relation back doctrine *de novo*."

*Hodge*, 554 F.3d at 377 (citing *United Auto. Workers Local 259 Social Sec. Dept. v.*

*Metro Auto. Ctr.*, 501 F.3d 283, 286 (3d Cir. 2007) (conducting plenary review of district

court's interpretation of procedural rules)).

The one-year limitations period governing Whitaker's habeas petition expired on

August 4, 2014.[4]  Though Whitaker timely filed his petition on April 16, 2014, he did not

assert his *Bruton* claim until December 23, 2014, 141 days after the expiration of the

limitations period. (J.A. 42.)  Whitaker argues that the *Bruton* claim relates back to his

timely ineffective assistance of counsel claim because they are both based on Stewart's

confession. Pet'r's Br. 20. Whitaker's *Bruton* claim, however, fails to relate back under

---

[4]  Whitaker was convicted on October 29, 2003. Following the direct appeal process, the Pennsylvania Supreme Court denied *allocatur* on December 21, 2005. (J.A. 40.) His conviction became final ninety days later, on March 21, 2006, when the time for seeking certiorari with the United States Supreme Court expired. (*Id.*) This triggered AEDPA's one-year statute of limitations.

On October 26, 2006—219 days into the one year period—Whitaker filed his first PCRA petition, which tolled AEDPA's statute. Following the direct appeal process, the Pennsylvania Supreme Court denied *allocatur* on March 11, 2014, and AEDPA's one year limitation period began to run again, leaving Whitaker with 146 days, until August 4, 2014, to file his habeas petition. (J.A. 41–42.)

Federal Rule of Civil Procedure 15(c) because the claims rely on facts that differ in both time and type, and thus fail to share a common core of operative facts.

As to time, Whitaker's ineffective assistance claim concerns his counsel's conduct at trial—specifically, his lawyer's failure to object to that part of the prosecutor's closing where Whitaker was effectively revealed to be "the other guy" in Stewart's confession—and whether Whitaker's constitutional rights were violated as a result of his lawyer's inaction. In contrast, his untimely *Bruton* claim focuses on what happened before trial—whether the trial court improperly admitted Stewart's confession using "the other guy" in place of Whitaker's name.

The facts supporting both claims also differ in type. Whitaker's untimely claim does not seek to clarify his timely ineffective assistance claim; it purports to introduce a new theory into the case. In his habeas petition, Whitaker seeks relief due to ineffective assistance of counsel solely because his lawyer failed to object or seek a mistrial based on the prosecutor's statements identifying Whitaker as "the other guy." While both claims involve Stewart's confession, Whitaker's timely ineffective assistance claim challenges the performance of trial counsel, whereas the untimely *Bruton* claim pertains to the trial court's admission of Stewart's redacted confession. Whitaker himself recognizes that the facts supporting these two claims differ in type: he states that "[o]ne claim on appeal alleges the descriptor was itself insufficient to prevent a Bruton violation, whereas the other alleges counsel was deficient for failing to request a mistrial when it became apparent during closing that the prosecution had undone any protection otherwise afforded by the alteration." Pet'r's Br. 21–22.

11

Whitaker was required to set forth all grounds for relief in his petition to avoid "be[ing] barred from presenting additional grounds at a later date." Pet. for Writ of Habeas Corpus Instructions at 8; *see also Mayle*, 545 U.S. at 655–56 (model habeas form includes cautionary instruction to include all grounds for relief). Whitaker could have included the details surrounding his untimely *Bruton* claim when he filed his ineffective assistance claim, but failed to do so. Because Whitaker's untimely *Bruton* claim relies on facts that differ in time and type from his ineffective assistance claim, the claims do not share a common core of operative facts, and the *Bruton* claim does not relate back to the ineffective assistance of counsel claim.

**B**

We turn next to Whitaker's claim that he was denied effective assistance of counsel when his lawyer failed to object or seek a mistrial after the prosecutor revealed that Whitaker was "the other guy" during closing argument, a claim the Superior Court rejected. AEDPA requires a deferential standard of review of the state court's decision. Under the statute, a federal court "may not grant a habeas corpus application 'with respect to any claim that was adjudicated on the merits in State court proceedings,' 28 U.S.C. § 2254(d), unless the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States….'" *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010) (quoting 28 U.S.C. § 2254(d)(1)). A state court ruling "is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to

12

the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." *McMullen v. Tennis*, 562 F.3d 231, 236 (3d Cir. 2009). When we review an ineffectiveness claim under § 2254(d)(1), as here, we must "determine what arguments or theories supported…the state court's decision," and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

A determination that a state court's analysis is contrary to or an unreasonable application of clearly established law is not alone sufficient to grant habeas relief. *See Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 849 (3d Cir. 2017). When a federal court reviewing a habeas petition concludes "that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred." *Id.* (citing *Lafler v. Cooper*, 566 U.S. 156, 174 (2012)).

After applying AEDPA's deferential standard of review, we conclude that the Superior Court's denial of Whitaker's ineffective assistance claim was an unreasonable application of clearly established federal law. Despite correctly identifying *Strickland* as controlling, the Superior Court unreasonably applied that standard by concluding that any ineffectiveness claim was meritless because there had been no *Bruton* violation.

Under *Bruton*, "a defendant is deprived of his rights under the Sixth Amendment's Confrontation Clause when the non-testifying co-defendant's statement naming him a

13

participant in the crime is introduced at their joint trial…." *Vazquez v. Wilson*, 550 F.3d 270, 279 (3d Cir. 2008). At Whitaker's trial, the prosecutor did just that when he identified Whitaker as "the other guy" in Stewart's confession during closing argument. In denying Whitaker's ineffectiveness claim, the Superior Court relied on the Pennsylvania Supreme Court's decision in *Brown I*, which held that the United States Supreme Court had not extended the reach of the Confrontation Clause to non-evidentiary commentary by counsel. 592 Pa. at 397. In *Brown v. Superintendent Greene SCI* (*Brown II*) however, we rejected that reasoning and held that *Bruton* extends to closing argument, protecting a defendant from having a non-testifying co-defendant's statement introduced at trial which names him as a participant in the crime. 834 F.3d 506, 517 (3d Cir. 2016).[5] In so holding, we relied on *Bruton*, *Frazier v. Cupp*, 394 U.S. 731 (1969), *Richardson v. Marsh*, 481 U.S. 200 (1987), and *Gray v. Maryland*, 523 U.S. 185 (1998), all of which predated Whitaker's trial. No fairminded jurist could disagree that *Brown I*—the basis for the Superior Court's denial of Whitaker's ineffective assistance claim—is inconsistent with those Supreme Court precedents.

Because Whitaker's Sixth Amendment rights were violated when the prosecutor revealed him to be "the other guy" in Stewart's confession, an objection under *Bruton* by trial counsel would have been meritorious. The Superior Court's denial of Whitaker's

---

[5]     As the Supreme Court instructed, "an appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent…." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

ineffectiveness claim on the basis that there was no *Bruton* violation is therefore not entitled to AEDPA's deferential standard, and his claim must be reviewed *de novo*.

The Supreme Court's two-part test in *Strickland* governs claims for ineffective assistance of counsel. "To succeed on such a claim, the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687)). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). With respect to *Strickland*'s first prong, there is a "strong presumption" that counsel's performance was not deficient. *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Here, the record is silent concerning whether counsel had a strategic reason for not objecting to the "unmasking" of Whitaker, as the record contains no clear explanation as to why trial counsel chose not to object to the prosecutor's comments during closing arguments. Counsel objected multiple times during the prosecutor's closing argument but did not object during the statement about Whitaker sharing the proceeds. Counsel was clearly attentive during the summations but the record is silent concerning why counsel did not object. Thus, we will remand for the development of an evidentiary record on this subject and other findings concerning *Strickland* that the District Court deems warranted.

**IV**

Whitaker's untimely *Bruton* claim fails to relate back, but the Superior Court unreasonably applied *Strickland*. We will affirm the District Court's decision as to Whitaker's *Bruton* claim but vacate the District Court's judgment on Whitaker's ineffective assistance of counsel claim. We will remand that claim for an evidentiary hearing to investigate trial counsel's reasons for not objecting to the prosecutor's identification of Whitaker in his closing argument and to make additional findings on his ineffective assistance of counsel claim as warranted.