James Douglas CLAUSELL, Appellant,

v.

**Lydell SHERRER; The Attorney General of the State of New Jersey.**

No. 06–4606.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Nov. 09, 2009.

Opinion Filed: Feb. 5, 2010.

As Amended March 23, 2010.

**192**

Mary Gibbons, Esquire, Toms River, NJ, for Appellant.

Robert D. Bernardi, Esquire, Jennifer B. Paszkiewicz, Esquire, Burlington County Prosecutor's Office, Mount Holly, NJ, for Appellees.

Before: AMBRO, GARTH and ROTH, Circuit Judges.

## OPINION

GARTH, Circuit Judge:

Appellant James Douglas Clausell appeals for a new trial from the order of the United States District Court for the District of New Jersey which denied his 28 U.S.C. § 2254 petition for writ of habeas corpus. Clausell claims that his counsel was constitutionally ineffective in failing to object to the prosecutor's peremptory challenges to Afro–American and/or Hispanic venirepersons. We will affirm.

## I.

On October 31, 1984, the Burlington County Grand Jury indicted Clausell for first degree capital murder of Edward Louis Atwood.[1] At the ensuing trial, a jury convicted Clausell of, *inter alia,* first-degree capital murder, in violation of N.J.S.A. §§ 2C:11–3(a)(1) & (2).[2] During the penalty phase of the trial, Clausell was sentenced to death pursuant to N.J.S.A. 2C:11–3 (c). Clausell appealed to the New Jersey Supreme Court, and in 1990 Clausell's conviction was reversed and the case was remanded for a new trial.

In October 1995, jury selection commenced for Clausell's retrial. During the process of jury selection, Clausell did not object to the prosecutor's use of peremptory challenges to excuse five of the eight Afro–American and/or Hispanic members of the venire.

Clausell was retried from December 4, 1995, to January 19, 1996. At the conclusion of the trial, the jury found Clausell guilty of, *inter alia,* first-degree murder.[3] He was sentenced to life imprisonment with a thirty-year parole disqualifier.

---

1. Appellant Clausell is an Afro–American, as was Atwood.

2. Because the sole issue before us on appeal arises from the jury selection at Clausell's *1995 retrial,* we supply only a basic procedural history of the case up until that point.

3. The New Jersey law in effect in 1996 distinguished between the crimes of first-degree murder and first-degree capital murder. A person was guilty of first-degree murder if he was found to have "purposely or knowingly caused death or participated in one of number of crimes during the commission of which death resulted." *State v. Ramseur,* 106 N.J.

123, 524 A.2d 188, 203 (1987) (citing N.J.S.A. 2C:11–3(a)(1)–(3)). Defendants convicted of first-degree murder were sentenced to a prison term of at least thirty years without parole. *Id.* In contrast, a person was guilty of first-degree *capital* murder only if "he has been found guilty of purposeful and knowing murder and committed the murder by his own hand or paid someone else to do so." *Id.* Defendants convicted of first-degree capital murder "face either death or at least a thirty-year term of imprisonment without parole, depending on the outcome of the sentencing proceeding." *Id.* (*citing* N.J.S.A. 2C:11–3(c) (repealed 2007)).

Clausell appealed his conviction and sentence, but did not raise any claims regarding the prosecutor's use of peremptory challenges during jury selection. On April 1, 1999, the New Jersey Superior Court, Appellate Division, denied his appeal. Clausell thereafter filed a *pro se* petition for post-conviction relief on September 24, 1999, wherein he alleged for the first time that he was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel "by his attorneys [sic] ... [f]ailure to object to [sic] *Batson* violation...." App. at 172. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that "racially discriminatory exercise of peremptory challenges by a prosecutor is a violation of the Equal Protection Clause...." *Jones v. Ryan*, 987 F.2d 960, 965 (3d Cir.1993).

On April 11, 2002, the New Jersey Superior Court denied Clausell's petition for post-conviction relief. Clausell appealed, and the New Jersey Superior Court, Appellate Division, affirmed the denial of Clausell's petition in a decision dated December 10, 2003. The New Jersey Supreme Court denied certification on April 26, 2004.

Clausell then filed a petition for writ of habeas corpus to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 2254, wherein he raised, *inter alia,* the claim that his constitutional rights were violated as a result of his trial counsel's failure to raise a *Batson* objection in response to the State's use of peremptory challenges during jury selection for his retrial. The District Court denied Clausell's petition. *Clausell v. Sherrer*, 2006 WL 2846283 (D.N.J. Sept.29, 2006).

Clausell subsequently submitted a request to this Court for a certificate of appealability under 28 U.S.C. § 2253(c)(1), which was granted with respect to two independent claims—(1) a substantive *Batson* claim; and (2) a Sixth Amendment ineffective assistance of counsel claim premised upon the failure of Clausell's counsel to raise a *Batson* objection. Order, *Clausell v. Sherrer*, No. 06–4606 (3d Cir. Apr. 5, 2007).

**II.**

In *Batson*, the Supreme Court reaffirmed the fundamental principle that "racial discrimination in jury selection offends the Equal Protection Clause," 476 U.S. at 85, 106 S.Ct. 1712, and further held that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.* at 96, 106 S.Ct. 1712. The Court then addressed the now-familiar three-step analysis guiding trial courts' constitutional review of peremptory challenges, which places the initial burden on the defendant to come forward with a prima facie case indicating discriminatory purpose by the prosecution in the exercise of its challenges, *id.* at 96–97, 106 S.Ct. 1712, then shifts the burden to the prosecution, which must supply race-neutral explanations for its challenges, *id.* at 97, 106 S.Ct. 1712, and finally tasks the court with the duty of "determin[ing] if the defendant has established purposeful discrimination." *Id.* at 98, 106 S.Ct. 1712.

While *Batson* discussed the analysis of a defendant's objection to the prosecution's use of peremptory challenges, the Court expressly "decline[d] ... to formulate *particular* procedures to be followed upon a defendant's timely objection to a prosecutor's challenges," *id.* at 99, 106 S.Ct. 1712 (emphasis added), explaining that "[i]n light of the variety of jury selection practices followed in our state and federal trial

courts, we make no attempt to instruct these courts how best to implement our holding today." *Id.* at 99 n. 24, 106 S.Ct. 1712.

Just a few months after *Batson* was issued, the New Jersey Supreme Court, in *State v. Gilmore,* 103 N.J. 508, 511 A.2d 1150 (1986), accepted the implicit invitation to "spell out the contours of [*Batson's* ] Equal Protection holding," *Batson,* 476 U.S. at 103, 106 S.Ct. 1712 (White, J., concurring), and proceeded to "formulate the procedures to be followed by trial courts when a defendant alleges that a prosecutor is improperly using peremptory challenges," *Gilmore,* 511 A.2d at 1163. Though the *Gilmore* court expressly "base[d][its] decision on the New Jersey Constitution, which protects fundamental rights independently of the United States Constitution," *id.* at 1157, it clearly intended its holding to conform to the parameters set forth in *Batson. See id.* ("We observe that under *Batson's* interpretation of the Equal Protection Clause of the Fourteenth Amendment ... the United States Constitution would compel the result that we reach on independent state grounds."). *Gilmore* effectively added flesh to the framework discussed in *Batson* by setting forth the precise standards applicable to each step of the analysis. *Id.* at 1164–67.

Of particular significance to the instant case is *Gilmore's* discussion of the first step of the analysis, which states that, in order to establish a prima facie claim, "[t]he defendant ... must show that there is a *substantial likelihood* that the peremptory challenges resulting in the exclusion were based on assumptions about group bias rather than any indication of situation-specific bias." *Id.* at 1164 (emphasis added). The "substantial likelihood" standard for establishing a prima facie claim remained controlling law in New Jersey for more than two decades, and had been in place for nine years at the time of Clausell's 1995 retrial.

In 2009, nearly twenty-three years to the day after it decided *Gilmore,* the New Jersey Supreme Court acknowledged in *State v. Osorio,* 199 N.J. 486, 973 A.2d 365 (2009), that the "substantial likelihood" standard set forth in *Gilmore* as the threshold for establishing a prima facie claim of improper race-based peremptory challenges by the prosecution was in tension with the Supreme Court's holding in *Batson.* 973 A.2d at 375–76. Taking its cue from *Johnson v. California,* 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), where the Supreme Court clarified that "a defendant satisfies the requirements of *Batson's* first step by producing evidence sufficient to permit the trial judge to draw an *inference* that discrimination has occurred," *id.* at 170, 125 S.Ct. 2410 (emphasis added), the New Jersey Supreme Court in *Osorio* modified *Gilmore's* "substantial likelihood" standard to the less-onerous "inference" standard announced in *Johnson. Osorio,* 973 A.2d at 375–76.

Having supplied the relevant jurisprudential backdrop, we direct our attention to Clausell's claims.[4]

## III.

■ As an initial matter, we can dispose of Clausell's substantive *Batson* claim, because in failing to raise an objection at trial to the prosecutor's use of peremptory

4. The District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. Because the District Court ruled on Clausell's habeas petition without conducting an evidentiary hearing, we conduct a plenary review. *McMullen v. Tennis,* 562 F.3d 231, 236 (3d Cir.2009).

challenges, Clausell forfeited his right to raise a *Batson* claim on appeal. *See Lewis v. Horn,* 581 F.3d 92, 102 (3d Cir.2009) (*citing Abu–Jamal v. Horn,* 520 F.3d 272, 284 (3d Cir.2008), *vacated on other grounds sub nom. Beard v. Abu–Jamal,* —— U.S. ——, 130 S.Ct. 1134, —— L.Ed.2d ——, 2010 WL 154862 (2010)). *Accord Batson,* 476 U.S. at 100, 106 S.Ct. 1712 (specifically noting that defendant made a "timely" objection); *Gilmore,* 511 A.2d at 1164 ("As a threshold matter, we emphasize that the defendant must timely object to the prosecution's use of peremptory challenges—during or at the end of the jury selection, but before the petit jury is sworn. This requirement will facilitate the development of as complete a record of the circumstances as is feasible, as well as enabling the trial court to make a fairer determination.").

## IV.

■ We now turn to Clausell's Sixth Amendment claim for ineffective assistance of counsel. Clausell makes no secret of the fact that the ineffective assistance claim is his primary claim on appeal, stating in his brief that he is "not asking for consideration of the substantive *Batson* claim, but rather, the Sixth Amendment claim based on ineffective assistance of counsel." Appellant's Reply Brief at 29, *Clausell v. Sherrer,* No. 06–4606 (3d Cir. Oct. 13, 2009). This conforms with the contents of Clausell's petition for post-conviction relief, where he raised an ineffective assistance claim premised upon his counsel's failure to raise a *Batson* objection, but did not raise an independent *Batson* claim. *See* App. at 171–72.

In order to obtain habeas relief from the New Jersey Superior Court's denial of his ineffective assistance claim, Clausell must satisfy the standards set forth by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq. McMullen v. Tennis,* 562 F.3d 231, 236 (3d Cir.2009). AEDPA provides that, where, as here,

> a habeas petitioner's claim was adjudicated on the merits in state court, the petition may not be granted unless the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.

*Simmons v. Beard,* 581 F.3d 158, 165 (3d Cir.2009) (*quoting* 28 U.S.C. § § 2254(d) & (e)(1)) (internal citations and quotation marks omitted).

■ A state court decision "fails the 'contrary to' prong of AEDPA if the state court reaches a conclusion opposite to the Supreme Court's own conclusion on a question of law or decides the case differently where the Supreme Court was confronted by a set of materially indistinguishable facts." *McMullen,* 562 F.3d at 236. "Similarly, a state court ruling is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." *Id.*

In denying Clausell's ineffective assistance claim, the New Jersey Superior Court concluded that the evidence submitted by Clausell—namely, the fact that the prosecutor used peremptory challenges to strike five of the eight Afro–American

and/or Hispanic members of the venire—would not have succeeded in satisfying *Gilmore*'s "substantial likelihood" threshold for establishing a prima facie claim.[5] App. at 190. The court noted that "[t]his statistic alone does not prove that the strikes were discriminatory in nature," and thus, "[w]ithout further proof of this claim[,] . . . the argument fails." *Id.* The court reasoned that since Clausell failed to assert sufficient evidence to establish a prima facie claim under the prevailing *Gilmore* standard, *ipso facto* his trial counsel was not ineffective in failing to raise what would have been a meritless claim.[6]

We find this logic sound. "The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook,* —— U.S. ——, 130 S.Ct. 13, 16, 175 L.Ed.2d 255 (2009) (per curiam) (*quoting Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (quotation marks omit-

ted). The "prevailing professional norms" standard is temporally sensitive, determined in each instance by "the professional norms prevailing *when the [allegedly ineffective] representation took place.*" *Id.* (*citing Strickland,* 466 U.S. at 688, 104 S.Ct. 2052) (emphasis added). In addition, a court evaluating an ineffective assistance claim must do so "[i]n light of the variety of circumstances faced by defense counsel and the range of legitimate decisions regarding how best to represent a criminal defendant"; thus "the performance inquiry necessarily turns on whether counsel's assistance was reasonable considering all of the circumstances." *Wong v. Belmontes,* —— U.S. ——, 130 S.Ct. 383, 384, —— L.Ed.2d —— (2009) (per curiam) (*quoting Strickland,* 466 U.S. at 688–89, 104 S.Ct. 2052) (quotation marks and alteration omitted). Moreover, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.

5. Although Clausell, in his petition for postconviction relief, grounded his ineffective assistance claim regarding his counsel's failure to object to the prosecution's use of peremptory challenges upon *Batson,* which articulates a defendant's rights vis-á-vis race-based peremptory challenges under the U.S. Constitution, *see* App. at 172, the New Jersey Superior Court evaluated his claim through the lens of *Gilmore,* which rested upon the rights provided by the New Jersey Constitution. *See Gilmore,* 511 A.2d at 1157. This is not surprising, given that New Jersey courts viewed the protection provided by *Gilmore* pursuant to the New Jersey Constitution as not only equal to, but in fact *greater than,* that provided by the U.S. Constitution under *Batson. See Gilmore,* 511 A.2d at 1157 ("We previously have construed our state constitution as providing greater protection to our citizens' individual rights than accorded them under the federal constitution. We do so here as well."); *accord State v. Fuller,* 182 N.J. 174, 862 A.2d 1130, 1141–42 (2004).

6. Clausell points out that a self-prepared chart he submitted in state court not only identifies the races of the jurors who were struck, but also the racial composition of the entire venire. He concedes that there is no record evidence substantiating his assertions of the racial composition of the venire, or that of the venirepersons who were struck by the State. Clausell relied only upon his memory of the jury selection process—which had occurred almost six years earlier—to identify the races of the venirepersons. Under the circumstances, we can find no error by Clausell's counsel in failing to object to the prosecution's use of peremptory challenges, given that such an objection would have been judicially futile and overruled, as it did not meet *Gilmore*'s demanding "substantial likelihood" standard, which was firmly entrenched in New Jersey's jurisprudence at the time of Clausell's re-trial.

Finally, it bears noting that "[a]t all points, judicial scrutiny of counsel's performance must be highly deferential." *Wong*, 130 S.Ct. at 384–85 (*quoting Strickland*, 466 U.S. at 689, 104 S.Ct. 2052) (quotation marks and alteration omitted).

At the 1995 retrial, when Clausell was allegedly the victim of ineffective representation, the governing and controlling law in New Jersey regarding the standard for asserting a prima facie claim of improper peremptory challenges by the prosecutor was the "substantial likelihood" standard prescribed by the New Jersey Supreme Court in *Gilmore*. An objection by Clausell's counsel in the face of that standard—when all Clausell could show was the unadorned fact that five out of eight Afro-American and/or Hispanic venirepersons had been excused by peremptory challenges—would have been rejected by all courts and thus utterly futile, given the precedent set by *Gilmore*.

Was Clausell's counsel reasonable in not objecting to the prosecutor's use of peremptory challenges, given the lack of evidence pointing to prejudice, juxtaposed with *Gilmore*'s demanding "substantial likelihood" standard? Pursuant to the *Gilmore* precedent, we can confidently answer this question in the affirmative.

Thus, our "effort[s] ... to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time," *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, lead us to conclude that the failure of Clausell's trial counsel to raise what would have been a rejected *Batson* objection under the prevailing law in New Jersey at that time does not "fall[ ] below an objective standard of reasonableness, given the particular circumstances of the case at hand." *Hodge v. U.S.*, 554 F.3d 372, 379 (3d Cir.2009) (*quoting Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (quotation marks omitted). Clausell's ineffective assistance claim fails to meet the first prong of the *Strickland* standard—i.e., to show that the assistance of counsel was deficient.

## V.

In evaluating Clausell's Sixth Amendment claim pursuant to the guidelines set forth in AEDPA, our inquiry is limited to determining whether the state court reasonably applied established federal law regarding Sixth Amendment ineffective assistance claims—which, we conclude, it did. The New Jersey Superior Court's reasoning in denying Clausell's Sixth Amendment ineffective assistance claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence presented. We will therefore affirm the District Court's denial of Clausell's petition for habeas relief on his Sixth Amendment ineffective assistance claim. *Weeks v. Angelone*, 528 U.S. 225, 237, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000).

## VI.

The District Court correctly denied Clausell's substantive *Batson* claim and his Sixth Amendment ineffective assistance claim, and we will affirm its judgment.

AMBRO, Circuit Judge, concurring.

I agree with my colleagues that Clausell has forfeited his substantive *Batson* claim by failing to raise a contemporaneous objection at trial. *Abu–Jamal v. Horn*, 520 F.3d 272 (3d Cir.2008), *vacated on other grounds sub nom. Beard v. Abu–Jamal*, —— U.S. ——, 130 S.Ct. 1134, —— L.Ed.2d

——, 2010 WL 154862 (2010). While I would also affirm the dismissal of Clausell's ineffective-assistance-of-counsel claim, I would do so on narrower grounds, and write separately to address another matter, not necessary to the outcome of this case, that I nonetheless deem of concern.

In state post-conviction review proceedings, Clausell submitted a self-prepared chart purporting to identify the racial composition of the venire from his 1995 retrial. Clausell's chart reflects that (1) the venire consisted of 47 individuals,[7] eight of whom were minorities (five African–Americans and three Hispanics); (2) one African–American and one white venireperson were excused by the trial court; and (3) out of 11 peremptory challenges, the State used three against the four remaining African–American venirepersons, and two against the three Hispanic venirepersons.[8] On appeal, Clausell emphasizes that his chart reveals a "strike rate" of 45%, and an "exclusion rate" of 71%.[9] Accordingly, he argues that trial counsel could have made out a *prima facie Batson* claim based on a "pattern" of strikes, which, as our Court recently explained, requires evidence of "both the strike rate and the racial composition of the venire." *Id.* at 290. Trial counsel's failure to raise a *Batson* challenge based on these statistics—resulting in the failure to trigger the three-step *Batson* inquiry—is the basis of Clausell's ineffective-assistance-of-counsel claim.

Clausell concedes, however, that the trial record itself does not indicate the racial composition of the venire or the races of the venirepersons who were struck by the State. Lacking any record evidence to corroborate Clausell's chart, we cannot rely on it or the racial makeup it purports to disclose, as it is apparently based solely on his memory of jury selection in a trial that occurred six years prior. *See Lewis v. Horn,* 581 F.3d 92, 104 (3d Cir.2009) (petitioner's allegations that the prosecutor "exercised eight peremptory strikes against African American potential jurors and four against white potential jurors," and that he was "tried ... by an all-white jury," failed to establish a *prima facie Batson* claim, where petitioner "d[id] not cite to any record support, nor d[id] he offer other support outside the record, to substantiate [his] bare allegation[s]"); *Abu–Jamal,* 520 F.3d at 291–92 & n. 18 (although record showed that prosecution used 10 out of 15 peremptory strikes to remove black venirepersons, "[t]here [was] no factual finding at any level of adjudication, nor evidence from which to determine the racial composition ... of the entire venire—facts that would permit the computation of the exclusion rate and would provide important contextual markers to evaluate the strike rate"). Because we cannot rely on Clausell's allegations regarding the racial composition of the venire, we need not reach the question whether an objection based on statistics consistent with his chart would have been

7. Although the venire initially had 50 potential jurors, three were excused by the trial court before the parties began exercising their peremptory strikes.

8. According to Clausell's chart, his own counsel struck the third Hispanic venireperson, and the State used its remaining 6 peremptory strikes against white venirepersons.

9. As we explained in *Abu–Jamal,* "[t]he strike rate is computed by comparing the number of peremptory strikes the prosecutor used to remove black potential jurors with the prosecutor's total number of peremptory strikes exercised. This statistical computation differs from the 'exclusion rate,' which is calculated by comparing the percentage of exercised challenges used against black potential jurors with the percentage of black potential jurors known to be in the venire." *Id.* at 290.

sufficient to establish a *prima facie Batson* claim. That is, even under a less "demanding" standard than that announced in *State v. Gilmore,* 103 N.J. 508, 511 A.2d 1150 (1986), Maj. Op. at 196 n. 6, Clausell's allegations are insufficient to show that trial counsel was deficient for failing to raise a *Batson* objection.

Although they also discredit the reliability of Clausell's chart, *id.,* my colleagues conclude that Clausell's ineffective-assistance-of-counsel claim fails because a *Batson* challenge by trial counsel, based on the "unadorned fact" that five out of eight minorities were struck, "would have been rejected by all courts and thus utterly futile, given the precedent set by *Gilmore.*" [10] *Id.* at 197. However, I am troubled by portions of the majority opinion that could be read to imply that *Gilmore*'s "substantial likelihood" standard *itself* is not "contrary to, or ... an unreasonable application of," *Batson.* 28 U.S.C. § 2254(d)(1).

My colleagues first suggest that the Supreme Court only recently "clarified" in *Johnson v. California,* 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), that a standard similar to *Gilmore*'s "substantial likelihood" standard—*i.e.,* California's "more likely than not" test—is inconsistent with *Batson.* Maj. Op. at 194. I have

doubts about this characterization of *Johnson.* Although the Supreme Court reaffirmed in *Johnson* that "a defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an *inference* that discrimination has occurred," 545 U.S. at 170, 125 S.Ct. 2410 (emphasis added), the *Batson* Court itself used the term "inference" to describe the requisite *prima facie* showing, and held that a "pattern" of strikes against minority jurors "might give rise to an inference of discrimination." *Batson v. Kentucky,* 476 U.S. 79, 97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Indeed, the *Johnson* Court concluded that California's "more likely than not" standard found "no support" in *Batson.*[11] *Johnson,* 545 U.S. at 169, 125 S.Ct. 2410.

The Majority also appears to suggest that *Gilmore* is not contrary to *Batson* because *Batson* "decline[d] ... to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges," *Batson,* 476 U.S. at 99, 106 S.Ct. 1712, and the "substantial likelihood" standard was New Jersey's answer to the *Batson* Court's "implicit invitation." Maj. Op. at 193–94. I do not read this language from *Batson* as authorizing states to impose a more onerous burden to

---

**10.** I do not understand my colleagues to be holding that evidence of a "pattern" of strikes against minority venirepersons, without more, would have been insufficient as a matter of law to establish a *prima facie* case under *Gilmore.* Indeed, the *Gilmore* Court emphasized that determining whether there is a "substantial likelihood" of group bias requires consideration of "all relevant circumstances," including whether (1) the prosecutor struck "'most or all of the members of [an] *identified group from the venire,*'" or (2) the prosecutor used a "'disproportionate number'" of peremptory strikes against members of that group. *Gilmore,* 511 A.2d at 1165 (*quoting People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748, 764 (1978)).

**11.** I note that *Gilmore*'s "substantial likelihood" standard was "based on the reasoning in" *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978)—the California Supreme Court decision that established the "more likely than not" standard the Supreme Court rejected in *Johnson. State v. Osorio,* 199 N.J. 486, 973 A.2d 365, 376 (2009) ("[T]he 'more likely than not' standard on which *Gilmore* is premised is the very standard the Supreme Court of the United States condemned as being 'at odds with the prima facie inquiry mandated by *Batson.*'") (*quoting Johnson,* 545 U.S. at 173, 125 S.Ct. 2410).

establish a *prima facie* case, however. Rather, the *Batson* Court seemed to be referring to the "particular procedures" to be followed after a finding of discrimination had been made. *See Batson*, 476 U.S. at 99 n. 24, 106 S.Ct. 1712 ("[W]e express no view on whether it is more appropriate in a particular case, upon a finding of discrimination ..., for the trial court to discharge the venire and select a new jury ..., or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire.") (internal citations omitted). Indeed, the Supreme Court rejected a similar argument in *Johnson*, reasoning that although states "have flexibility in formulating appropriate procedures to comply with *Batson*," California's "more likely than not" standard was "an inappropriate yardstick by which to measure the sufficiency of a prima facie case." *Johnson*, 545 U.S. at 168, 125 S.Ct. 2410; *but see id.* at 173–74, 125 S.Ct. 2410 (Thomas, J., dissenting) (arguing that California's "more likely than not" standard fell "comfortably within its broad discretion to craft its own rules of criminal procedure," and arguing that *Batson* had "disclaimed any intent to instruct state courts on how to implement its holding").

In any event, our Court has never addressed whether the *Gilmore* "substantial likelihood" standard is contrary to or an unreasonable application of *Batson*, and we are not required to answer that question in this case. With this qualification, I join my colleagues in concluding that Clausell has not met his burden under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), of showing that trial counsel was deficient for failing to raise a *Batson* objection.