**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3634
_____

UNITED STATES OF AMERICA

v.

ROBERT LAMAR WHITFIELD
a/k/a Lamar Whitfield
a/k/a Goat,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cr-00418-001)
Chief District Judge:  Honorable Juan R. Sanchez
_____

Argued:  June 8, 2022
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, AMBRO, and FUENTES, <u>Circuit</u> <u>Judges</u>.

(Filed: June 30, 2022)

Saumya Vaishampayan, Student Counsel [ARGUED]
Alexis Karteron
Rutgers University School of Law
123 Washington Street
Newark, NJ 07102

    <u>Counsel for Appellant</u>

Robert A. Zauzmer [ARGUED]
Office of United States Attorney

615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

        Counsel for Appellee

_____

OPINION*
_____

CHAGARES, Chief Judge.

Robert Lamar Whitfield appeals the District Court's order denying his 28 U.S.C.

§ 2255 motion.  Whitfield contends that his trial counsel provided ineffective assistance

of counsel by submitting an untimely motion for discovery on a selective enforcement

claim.  For the following reasons, we will affirm the judgment of the District Court.

I.

We write primarily for the parties and recite only the facts essential to our

decision.  This case began with a "reverse sting," an investigative technique used by the

Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  A reverse sting occurs

when an undercover ATF agent or a confidential informant "pose[s] as a drug courier

looking to recruit a team to rob a . . . drug stash house of which he ha[s] inside

knowledge."  Appendix ("App.") 99.  But there is no stash house to rob; it is imaginary.

In May 2012, the ATF began investigating a man named Kwasi Payne and decided

to target him for a reverse sting.  After experiencing difficulties keeping in contact with

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

2

Payne, a confidential informant ("CI") contacted Whitfield and explained that he was trying to get in touch with Payne about a "situation" (a robbery). App. 100. Whitfield expressed interest in the robbery, and the ATF shifted its reverse sting to him. An undercover ATF agent and the CI met with Whitfield and described a fake stash house to which they had access. Whitfield then recruited an eight-person crew to help him rob the stash house. An ATF response team arrested the entire crew on the morning of the planned robbery.

The crew members were charged with several counts of conspiracy to commit robbery, conspiracy to possess drugs with intent to distribute, attempted robbery, attempted possession with intent to distribute, and carrying a firearm during and in relation to a crime of violence/drug trafficking crime. Whitfield proceeded to trial in May 2013 and was found guilty of five counts. In June 2013, USA Today ran an article criticizing the ATF's reverse sting operations, and in August 2013, it reported that the Chief Judge of the United States District Court for the Northern District of Illinois had granted discovery for a selective enforcement claim[1] based on a "strong showing of potential bias" in the use of reverse stings for fake stash house robberies. App. 102.

In October 2013 — months after Whitfield's trial — Whitfield's trial counsel, J. Michael Farrell, filed a motion for a hearing and for discovery on the issue of racial

---

[1] Selective enforcement "occurs when police investigate people of one race but not similarly-situated people of a different race." Conley v. United States, 5 F.4th 781, 789 (7th Cir. 2021).

profiling and selective prosecution.[2]  The motion argued that the ATF and the United States Attorney's Office targeted African Americans and Latinos in its reverse sting operations.  The District Court held a hearing on the motion and questioned Farrell about why he filed the motion months after Whitfield's trial.  Farrell explained that it was only after seeing the USA Today articles that he began investigating the issue.

The District Court denied the motion, holding that the defendants had "not shown good cause for their failure to pursue this issue prior to trial."  App. 107.  The court also held that even if the defendants had shown good cause, they had not made the threshold showing necessary for obtaining discovery.  The court relied on United States v. Armstrong, 517 U.S. 456 (1996), which held that to obtain discovery on a claim of selective prosecution, the claimant must make a prima facie showing by providing "some evidence tending to show the existence of the essential elements of the defense, discriminatory effect and discriminatory intent," including "a credible showing of different treatment of similarly situated persons."  Id. at 468, 470 (cleaned up).  The District Court applied this standard to Whitfield's request for discovery on his selective prosecution and enforcement claims and held that he had not made a showing of different treatment of similarly situated individuals of another race.

---

[2] The defense initially labeled this motion as seeking discovery for a selective prosecution claim.  But, as the District Court noted, "[d]efendants' allegations of racial bias concern not only the decision to prosecute them but also the decision to target them in an ATF sting operation."  App. 106 n.7.  The District Court therefore "underst[ood] them to be raising a potential claim of selective enforcement as well as a claim of selective prosecution."  Id. (emphasis added).

4

Whitfield appealed the District Court's denial of discovery. This Court affirmed the judgment of the District Court, holding that Whitfield forfeited his selective enforcement claim because "[c]laims or defenses based on a 'defect in instituting the prosecution' must be raised before trial." United States v. Whitfield, 649 F. App'x 192, 196 (3d Cir. 2016) (quoting Fed. R. Crim. P. 12(b)(3)(A)). The Court did not reach the merits of Whitfield's request, but it noted that the Armstrong standard created an "effectively insurmountable" hurdle for defendants seeking discovery on selective enforcement claims. Id. at 196 n.11. The Court cited a recent United States Court of Appeals for the Seventh Circuit decision involving a reverse sting in which the court held that Armstrong did not apply to discovery requests related to selective enforcement claims. Id. (citing United States v. Davis, 793 F.3d 712 (7th Cir.2015) (en banc)). But because Whitfield forfeited his claim, the Court saved the question of "[w]hether or not the court in Davis was correct that Armstrong should not apply to selective enforcement claims . . . for another day." Id.

That day came in August 2017, when the Court in United States v. Washington, 869 F.3d 193 (3d Cir. 2017) followed the Seventh Circuit and held that "putative claims of unconstitutional selective enforcement are not governed by strict application of the Armstrong[] framework." Id. at 220. We explained that, "[d]istinct from what is required under Armstrong[], a defendant need not, at the initial stage, provide 'some evidence' of discriminatory intent, or show that (on the effect prong) similarly situated persons of a different race or equal protection classification were not arrested or investigated by law enforcement." Id. at 221.

In January 2018, Whitfield's new court-appointed counsel filed an amended § 2255 motion on the ground that Farrell provided ineffective assistance of counsel by submitting an untimely post-trial motion for discovery on selective enforcement. The District Court denied the motion without a hearing. Acting pro se, Whitfield filed a notice of appeal and moved for a certificate of appealability from this Court. A panel of this Court granted Whitfield's request for a certificate of appealability under 28 U.S.C. § 2253(c) on the question of whether his trial counsel was ineffective for failing to raise timely a selective enforcement claim. The Court appointed counsel to Whitfield in the same Order.[3]

## II.[4]

Whitfield argues that his trial counsel provided ineffective assistance of counsel by filing an untimely motion to seek discovery on a selective enforcement claim. To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was deficient, and (2) the deficiency resulted in prejudice to defendant. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

To establish that counsel's conduct was deficient, the defendant must show that counsel's representation fell "'below an objective standard of reasonableness' in light of

---

[3] We express our gratitude to a recent graduate of Rutgers University School of Law, Saumya Vaishampayan, and her supervising lawyer, Alexis Karteron, for their excellent pro bono representation of Whitfield in this matter.

[4] The District Court had jurisdiction under 28 U.S.C. § 2255. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. "We exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to its factual findings." United States v. Scripps, 961 F.3d 626, 631 (3d Cir. 2020).

'prevailing professional norms.'" Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (quoting Strickland, 466 U.S. at 686, 688). The Constitution does not guarantee "that defense counsel will recognize and raise every conceivable constitutional claim." Engle v. Isaac, 456 U.S. 107, 134 (1982); see also Knowles v. Mirzayance, 556 U.S. 111, 127 (2009). Our inquiry is linked to the "practice and expectations of the legal community." Gov't of V.I. v. Vanterpool, 767 F.3d 157, 165 (3d Cir. 2014) (quoting Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). And this inquiry is "temporally sensitive, determined in each instance by the professional norms prevailing when the allegedly ineffective representation took place." Clausell v. Sherrer, 594 F.3d 191, 196 (3d Cir. 2010) (cleaned up) (emphasis in original). We must be "highly deferential" and make every effort to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689.

The parties agree that Farrell's motion for discovery was untimely and that his untimeliness was not due to strategy. The crux of the performance issue, therefore, is whether Farrell was required to file the motion for discovery and selective enforcement claim in the first place to meet the Strickland performance prong.

We hold that Farrell's performance was not deficient. Examining the prevailing norms at the time of Whitfield's trial, motions for discovery on selective enforcement claims had a remote chance of success. Armstrong set a high bar for obtaining discovery on selective prosecution claims, and we had not ruled on whether the Armstrong prima facie standard applied to selective enforcement claims. But several Courts of Appeals had applied the Armstrong standard to discovery on selective enforcement. See, e.g., United States v. Alcaraz-Arellano, 441 F.3d 1252, 1264 (10th Cir. 2006); United States v.

7

Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002) ("[A] defendant seeking discovery on a selective enforcement claim must meet the same 'ordinary equal protection standards' that Armstrong outlines for selective prosecution claims."). We cannot say that Farrell was deficient for failing to file a motion that, at the time, had only a remote chance of success. See Harrington v. Richter, 562 U.S. 86, 110 (2011) ("[A]n attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."); see also United States v. Davies, 394 F.3d 182, 191 (3d Cir. 2005) (counsel was not ineffective because counsel "had no duty to predict that the arguments in [a later Supreme Court case] would become the law of the land, and did not act unreasonably in failing to advise [defendant] of its teachings before his guilty plea . . . .").

Whitfield argues that courts routinely granted discovery on selective enforcement claims around the time of his trial. It is true that, soon after Whitfield's trial, defendants in other fake stash house cases obtained pretrial discovery on claims of selective enforcement. See, e.g., United States v. Brown, No. 12–cr–632, Doc. No. 153 (N.D. Ill. July 31, 2013) (ordering discovery into how ATF and federal prosecutors identify suspects for investigation); United States v. Williams, No. 12–cr–632, Doc. No. 70 (N.D. Ill. July 21, 2013) (same). But Whitfield does not supply any such orders from before his trial, and we have found none. Because a "fair assessment of attorney performance requires us to evaluate the conduct from counsel's perspective at the time," we cannot say

that Farrell's failure to file such a motion was deficient. <u>Vanterpool</u>, 767 F.3d at 165 (cleaned up).

We hold that Whitfield failed to meet the performance prong of <u>Strickland</u>.[5] Because we will affirm on this ground,[6] we decline to reach the issue of prejudice.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[5] Whitfield argues that he should at least be entitled to an evidentiary hearing on his motion under 28 U.S.C. § 2255(b), which requires the District Court to hold a hearing unless the records of the case "conclusively show that the prisoner is entitled to no relief." <u>Id.</u> Because the law on deficient performance conclusively forecloses his ineffective assistance of counsel claim, Whitfield fails to meet the threshold for an evidentiary hearing.

[6] Although the District Court did not discuss the performance prong, "[w]e may affirm a judgment on any ground apparent from the record, even if the district court did not reach it." <u>Kabakjian v. United States</u>, 267 F.3d 208, 213 (3d Cir. 2001).